FILED

2017 Apr-05  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SMARTER EVERY DAY, LLC,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:15-cv-01358-RDP** |
| | } | |
| **VICTOR NUNEZ, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

### MEMORANDUM OPINION

This case is before the court on Plaintiff's Motion for Entry of Default.  (Doc. # 29).  The court entered a Show Cause Order directing Plaintiff to address "(1) why this case should not be dismissed for lack of personal jurisdiction over Defendants, (2) why this case should not be dismissed for improper venue, and (3) whether Plaintiff properly served Defendants Victor Nunez and Victor Nunez d/b/a Inkedtilldeath.com by publication under Federal Rule of Civil Procedure 4(e) and California Code of Civil Procedure § 415.50."  (Doc. # 30 at 2).  Plaintiff has responded to the Show Cause Order.  (Doc. # 31).  And, the court has received no response from Defendants to Plaintiff's motion for entry of default.  Accordingly, Plaintiff's motion for entry of default is under submission.

## I.    Procedural History and Background Facts

In August 2015, Plaintiff filed its original complaint against Defendants Contact Privacy, Inc. and Inkedtilldeath.com.  (Doc. # 1).  The complaint alleged that Plaintiff held the copyright to a video entitled "Tattooing Close Up (in slow motion)."  (*Id.* at ¶ 4).  That video was posted on a Facebook account owned by Inkedtilldeath.com, along with still photographs taken from the video.  (*Id.* at ¶ 5).  Plaintiff did not give Inkedtilldeath.com permission to use the video's

contents.  (*Id.*).  Plaintiff's counsel notified Defendant Inkedtilldeath.com about the copyright infringement in June 2015 but received no response.  (*Id.*).

Plaintiff alleged that Defendants committed copyright infringement by posting the Tattooing Up Close video and still photographs from that video to a Facebook page, in violation of 17 U.S.C. § 504.  (*Id.* at ¶ 6).  Plaintiff also alleged that Defendants committed fraud, misrepresentation, and deceit by (a) representing that the contents of the video belonged to Defendants and (b) placing a "vignette" over a portion of the video and images to obscure Plaintiff's watermark and insert another watermark.  (*Id.* at ¶ 7).  Plaintiff asserted that jurisdiction and venue were proper in the Northern District of Alabama because the acts mentioned in the complaint "have taken place throughout the United States and specifically within the state of Alabama and the Northern District of Alabama."  (*Id.* at ¶ 3).

Plaintiff then amended the complaint to add Victor Nunez as a Defendant.  (Doc. # 3). The amendment stated that Nunez was the owner and registrant of Inkedtilldeath.com.  (*Id.* at 1). According to Plaintiff, Nunez was a citizen of California.  (*Id.* at 2).  In November 2015, Plaintiff voluntarily dismissed its claims against Defendant Contact Privacy.  (Docs. # 10, 11).  In March 2016, Plaintiff filed a second amended complaint that referred to Defendant Inkedtilldeath.com as Victor Nunez d/b/a Inkedtilldeath.com.  (Doc. # 21 at 1).

The second amended complaint included an attachment with two exhibits.  (*See* Doc. # 21-1 at 7-9).  In a June 2015 letter, Plaintiff's counsel informed the owners of Inkedtilldeath.com that the company had taken Plaintiff's intellectual property and altered it to remove Plaintiff's watermark and apply Inkedtilldeath.com's watermark.  (*Id.* at 7).  Plaintiff's counsel threatened to commence litigation if Inkedtilldeath.com did not respond in fourteen days.  (*Id.*).  That letter did not describe the contents of Plaintiff's watermark, inform Defendants where Plaintiff was

located, or inform Defendants of the forum where litigation would be filed.  (*See id.*).  Plaintiff's second exhibit is a copy of the image posted on Inkedtilldeath.com's Facebook page.  (*Id.* at 9).  That exhibit includes Inkedtilldeath.com's watermark but does not include Plaintiff's watermark.  (*See id.*).

In April 2016, Plaintiff moved for leave to serve Defendants Nunez and Nunez d/b/a Inkedtilldeath.com by publication.  (Doc. # 23).  Plaintiff's agents had attempted to serve Nunez with a summons in Long Beach, California, Van Nuys, California, Glendale, Arizona, and Hawthorne, California, but they were unable to locate Nunez.  (*Id.* at 1-3).  Plaintiff determined that Nunez's most recent address was in Long Beach, California; accordingly, it sought leave to serve Nunez and Nunez d/b/a Inkedtilldeath.com by publication in a Long Beach newspaper.  (*Id.* at 3-4).  The court granted Plaintiff leave to serve Defendant Nunez d/b/a Inkedtilldeath.com by publication.  (Doc. # 24 at 2).  A clerk for a Long Beach newspaper averred that a notice of summons for this action was printed in the newspaper on May 17, 2016, May 24, 2016, May 31, 2016, and June 7, 2016.  (Doc. # 25-2 at 5).  Defendant Nunez d/b/a Inkedtilldeath.com has not filed an answer to the complaint with the court or otherwise defended this action after Plaintiff's service by publication.

Plaintiff moved for an entry of default against Defendants Nunez and Nunez d/b/a Inkedtilldeath.com.  (Doc. # 29).  In a show cause order, the court directed Plaintiff to justify the court's *in personam* jurisdiction and venue over this action.[1]  (Doc. # 30).

---

[1]   The show cause order also directed Plaintiff to discuss whether Defendants Nunez and Nunez d/b/a Inkedtilldeath.com were properly served under California Code of Civil Procedure § 415.50.  (Doc. # 30 at 2).  The court has reviewed Plaintiff's Notification of Completed Service (Doc. # 25) and observes no deficiency in Plaintiff's service by publication of Defendant Nunez d/b/a Inkedtilldeath.com.  In accordance with the court's prior order (Doc. # 24), Plaintiff's published notice of summons did not refer to Defendant Nunez as an individual defendant (*see* Doc. # 25-3 at 5).  But, the court need not determine the legal effect of that potential deficiency (if any) because this action is due to be dismissed on personal jurisdiction grounds.

## II.      Standard of Review

"[A] district court has the duty to assure that it has the power to enter a valid default judgment." *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).  Accordingly, when a party seeks an entry of judgment against another party who has failed to appear or defend itself in an action, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999).   Unlike lack of subject matter jurisdiction, lack of personal jurisdiction and improper venue are waivable defenses.  *Lipofsky v. New York State Workers Compensation Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988).  Nevertheless, a district court may consider venue or personal jurisdiction *sua sponte* if the issue has not been waived, although it cannot dismiss an action *sua sponte* on a venue or personal jurisdiction ground without providing the parties an opportunity to present their views.  *Id.*  The court has provided the parties an opportunity to address the personal jurisdiction and venue issues in this case (*see* Doc. # 30), and Plaintiff has presented its arguments for why this case is properly before this court.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  The determination of whether the exercise of personal jurisdiction over a nonresident defendant is appropriate involves a two-part analysis.  *See Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *see also Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989).   First, the jurisdictional question under the state long-arm statute is considered.[2]  *See Cable/Home Communication Corp.*,

---

[2]   Alabama's long-arm statute permits personal jurisdiction to the extent it "is not inconsistent with the constitution of this state or the Constitution of the United States."  Ala. R. Civ. P. 4.2(b).

902 F.2d at 855; *see also Alexander Proudfoot Co.*, 877 F.2d at 919.  Second, if there is a basis for the assertion of personal jurisdiction under the state long-arm statute, the next determination to be made is whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919.

When venue is contested, a plaintiff "has the burden of showing that venue in the forum is proper."  *Pritchett v. Paschall Truck Lines, Inc.*, 714 F. Supp. 2d 1171, 1172 (M.D. Ala. 2010).  The court must accept the allegations in Plaintiff's complaint as true, since those allegations have not been contradicted by any evidence or testimony.  *Id.*

### III.    Analysis

After careful review, the court concludes this action is due to be dismissed without prejudice for lack of personal jurisdiction and improper venue.

#### A.    Plaintiff's Complaint Fails to Demonstrate that the Court Has Specific Personal Jurisdiction Over Defendants

Plaintiff argues that the court can exercise specific personal jurisdiction over Defendants Nunez and Nunez d/b/a Inkedtilldeath.com because the Eleventh Circuit "has held that the mere publication of material by a defendant in a non-forum state which was both accessible and actually accessed in the forum state can subject a defendant to litigation in the forum state." (Doc. # 31 at 2) (citing *Internet Sols. Corp. v. Marshall*, 611 F.3d 1368 (11th Cir. 2010)). According to Plaintiff, Defendants knew that Plaintiff was located in Alabama, Defendants posted an unauthorized copy of the copyrighted video in a forum accessible in Alabama, and

individuals in Alabama actually have accessed the copied video. (*Id.* at 4). The court is not convinced.

The exercise of specific personal jurisdiction is proper over a nonresident defendant when he "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 475 (1985) (internal citations omitted). To show that litigation "arises out of" the activities in the forum state, the Eleventh Circuit does not use "mechanical or quantitative" tests. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009). Nevertheless, it is "not enough that there [is] some similarity between the activities that connect the defendant to the forum and the plaintiff's claim." *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 n. 3 (11th Cir. 2008) (internal emphasis omitted). Rather, the defendant's contacts with the forum must be related to the "operative facts of the controversy." *Id.* (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)).

Many courts have acknowledged the lack of definitive standards for determining when a defendant's online activities constitute sufficient minimum contacts to render that defendant amenable to jurisdiction in a particular foreign jurisdiction. *See, e.g.*, *Triple Up Ltd. v. Youku Tudou Inc.*, 2017 WL 354093, at *5 (D.D.C. Jan. 24, 2017) (observing that "the relationship between a defendant's online activity and its amenability to suit in a foreign jurisdiction often remains ill-defined") (citation and internal quotation marks omitted). Courts generally agree that the ability of forum residents to access a defendant's website, standing alone, does not suffice to establish minimum contacts with the forum state. *See, e.g.*, *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000); *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 61 (1st Cir. 2016). Many courts have found that a defendant purposefully availed

itself in a forum through Internet-based contacts in two situations: (1) where the defendant's website functioned "as the defendant's storefront in the forum"; and (2) where the defendant's conduct met the *Calder* "effects test." *Triple Up Ltd.*, 2017 WL 354093, at *6 (citing examples).

Under the effects test announced in *Calder v. Jones*, 465 U.S. 783 (1984), a forum may exercise personal jurisdiction over a defendant where the defendant committed "a tort that was (1) intentional[,] (2) aimed at the forum state[,] and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286. In *Licciardello*, the Eleventh Circuit concluded that a defendant was subject to personal jurisdiction in Florida for a trademark infringement claim under the *Calder* effects test. *See id.* at 1287-88. It relied on the defendant's use of a trademarked name and picture of a musician as an implied endorsement to conclude that the defendant "individually targeted [the plaintiff] in order to misappropriate his name and reputation for commercial gain." *Id.* Moreover, it noted that the defendant had been a personal manager for the plaintiff and other musicians who performed in Florida. *Id.* at 1282.

In the *A Corp.* opinion, the First Circuit addressed an issue closely analogous to the copyright infringement issue presented in this case: whether a forum has specific personal jurisdiction over an out-of-state defendant for a trademark infringement suit where an in-state trademark holder has suffered an injury and the defendant has operated a website with infringing material. 812 F.3d at 57. The First Circuit rejected the plaintiff's argument that the defendant had purposefully availed itself of Massachusetts' forum by targeting its trademark infringement on a Massachusetts company. *Id.* at 60 (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014), for the proposition that the location where a plaintiff suffered his or her injury is not the appropriate inquiry to determine purposeful availment). The First Circuit held that the

defendant's use of a passive website accessible in Massachusetts that contained a feature which infringed on a trademark owned by a Massachusetts company was insufficient, standing alone, to support personal jurisdiction over the defendant in Massachusetts.  *Id.* at 61.  The *A Corp.* opinion relied on several aspects of the defendant's website to conclude that the defendant did not purposefully avail itself in Massachusetts through the website.  *See id.* at 60.  Those aspects included: (1) the lack of a reference to Massachusetts on the website; (2) the lack of a mechanism for ordering goods or services through the website; (3) the lack of interactive features; and (4) the passive advertising of an e-mail address, fax number, and phone number for the defendant.  *Id.*  The First Circuit also mentioned that that defendant was not licensed to perform services in Massachusetts, never performed services in Massachusetts, and never conducted business in Massachusetts.  *Id.*

Here, the court finds that Plaintiff's complaint, as amended, fails to present a *prima facie* case of specific personal jurisdiction over Defendants because Plaintiff has not alleged sufficient facts to demonstrate that Nunez purposefully availed himself in Alabama.  The complaint gives no indication that Inkedtilldeath.com or its Facebook page referred to Alabama.  (*See* Doc. # 1 at ¶¶ 2, 5-7).  *See also A. Corp.*, 812 F.3d at 60.  Nor does it allege that an Alabama resident could order goods or services through Inkedtilldeath.com or the Facebook page.  (*See* Doc. # 1 at ¶¶ 2, 5-7).  *See also A. Corp.*, 812 F.3d at 60.  While the video could be considered an interactive feature available to Alabama residents, Plaintiff does not allege that Inkedtilldeath.com or its Facebook page contained an interactive feature through which an Alabama resident could conduct business with Inkedtilldeath.com or Nunez.[3]  (*See* Doc. # 1 at ¶¶ 2, 5-7).  *Cf. A. Corp.*,

---

[3]  Plaintiff provides no reason why Defendants would seek to conduct business with Alabama residents.  By all accounts, Nunez's last known place of residence was in California.  (*See* Doc. # 23 at 3-4).  Tattooing is not a service easily sold across state lines, as it requires the physical presence of the buyer, seller, and a tattoo pen in the same location.

812 F.3d at 60.  From what the court can discern through Plaintiff's complaint, Defendants utilized a passive website and Facebook page that were not specifically aimed towards promoting business in the Alabama market.  Defendants' use of those passive Internet websites does not show that they purposefully availed themselves in Alabama.  *See id.* at 61.

Moreover, the court cannot exercise personal jurisdiction over Defendants under the *Calder* effects test.  To assert personal jurisdiction over a defendant under the *Calder* test, a plaintiff must show that a defendant expressly aimed the intentional conduct at a "known forum resident."  *Licciardello*, 544 F.3d at 1287 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000)).  Plaintiff's complaint *suggests* that Nunez knew the identity of the owner of the copyrighted intellectual property because he obscured watermarks in the intellectual property and inserted his own watermarks.  (*See* Doc. # 1 at ¶ 7).  But, Plaintiff's complaint does not allege what information was included in the obscured watermarks, so the court cannot say whether the watermark included Plaintiff's identity.  (*See id.*).  Moreover, even if Defendants knew the identity of the video's creator, nothing in the complaint indicates that Nunez knew that Plaintiff was incorporated in Alabama or that the harm arising from his allegedly tortious conduct would be felt in Alabama.[4]  Nor does the complaint indicate that Nunez used the copyrighted material to obtain business in the Alabama market; again, by all accounts, Nunez lived in California at the time he committed the tortious conduct.  (Doc. # 23 at 3-4).  *See Mavrix Photo, Inc. v. Brand Techns., Inc.*, 647 F.3d 1218, 1229-30 (9th Cir. 2011) (concluding that a media website had expressly aimed its copyright infringement at California

---

[4]  "Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient" to meet the express aiming element of the *Calder* effects test.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998).  Plaintiff's complaint does not even contain that allegation regarding Defendants' knowledge.  Thus, this case is distinguishable from *Licciardello*, where the defendant used the trademarked name and image of a public figure to obtain an implied endorsement and had reason to know that the public figure lived in Florida due to a prior working relationship.  *See* 544 F.3d at 1282, 1287-88.

because a substantial number of the website's users lived in California, some advertisers on the website directed advertisements towards California residents, and the website's content focused "on the California-centered celebrity and entertainment industries").   Accordingly, the court concludes that Plaintiff has not presented a *prima facie* showing that Defendants' tortious conduct was expressly aimed at Alabama.   Thus, this court cannot exercise personal jurisdiction over Defendants under the *Calder* effects test.

Plaintiff's reliance on the Eleventh Circuit's opinion in *Marshall* cuts no ice.   In *Marshall*, the Eleventh Circuit considered whether a plaintiff could establish personal jurisdiction over a defendant through Florida's long-arm statute.   *Marshall*, 611 F.3d at 1370. That issue turned on the question of whether posting a defamatory comment to a Florida plaintiff's website was a "tortious act of defamation within Florida." *Id.* The Eleventh Circuit certified that question to the Florida Supreme Court, and the Florida Supreme Court held that the defendant's alleged defamation constituted a tortious act within Florida if the statement was accessible in Florida and actually accessed in Florida. *Id.* The Eleventh Circuit reversed the dismissal of the *Marshall* action and remanded the case for further proceedings. *Id.* at 1370-71. The *Marshall* opinion expressly noted that the Eleventh Circuit only addressed the first prong of personal jurisdiction against foreign defendants -- whether personal jurisdiction was allowed by the forum state's long-arm statute -- and did not address the issue of whether that exercise of personal jurisdiction comported with due process. *Id.* at 1371 n. 1.   In this case, the court's exercise of personal jurisdiction over Defendants would be permissible under Alabama's long-arm statute, so long as it is permissible under the Due Process Clause of the Fourteenth Amendment. *See* Ala. R. Civ. P. 4.2(b).   As explained above, however, the court cannot exercise

10

personal jurisdiction over Defendants under the Due Process Clause because they have not purposefully availed themselves in Alabama through their online conduct.

For the reasons explained above, Plaintiff's complaint does not present a *prima facie* case of personal jurisdiction over Defendants Nunez and Nunez d/b/a Inkedtilldeath.com.[5]  Therefore, Plaintiff's motion for entry of default is due to be denied, and this action is due to be dismissed.

### B.      Plaintiff's Copyright Suit has Not Been Filed in the Proper Forum

In its response to the show cause order, Plaintiff argues that venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the copyrighted works were filmed and uploaded to a website in this district.  (Doc. # 31 at 4).  Alternatively, Plaintiff contends that venue is proper in this district under Section 1391(b)(3) because it does not know Defendants' current residence and cannot determine which district would be the appropriate forum in California.  (*Id.* at 5).  After careful review, the court concludes that venue is not appropriate in this court.

Civil actions to enforce federal copyright law "may be instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a).  "A defendant 'may be found' in a district in which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant."  *Palmer v. Braun*, 376 F.3d 1254, 1259-60 (11th Cir. 2004) (quoting *Milwaukee Concrete Studios v. Fjeld Mfg. Co.*, 8 F.3d 441, 445-46 (7th Cir. 1993)).

---

[5]  The court need not address -- and does not address  -- whether the court's exercise of jurisdiction against Defendants would comport with traditional notions of fair play and substantial justice.  *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1276 (11th Cir. 2002) (discussing the application of this element of personal jurisdiction in the context of a motion to dismiss).  One of the main factors in determining whether a court's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice is "the burden on the defendant," and the court cannot reliably determine the extent to which defending this action would burden Defendants.  *Id.*  In *Meier*, the plaintiffs alleged that the defendants operated multiple luxury resorts and spent over $7 million on advertisements in the United States.  *Id.*  Plaintiff's complaint does not indicate that Inkedtilldeath.com was such a substantial enterprise.

Plaintiff has never claimed that Defendants reside in the Northern District of Alabama. (*See, e.g.*, Doc. # 31 at 5 (stating that Defendants' last known address was in California)). Moreover, as discussed above, Defendants are not subject to personal jurisdiction in the Northern District. Therefore, this action is also due to be dismissed for lack of venue.[6]

## IV.   Conclusion

For the reasons explained above, Plaintiff's motion for entry of default (Doc. # 29) is due to be denied because the court lacks personal jurisdiction over Defendants Nunez and Nunez d/b/a Inkedtilldeath.com. Alternatively, Plaintiffs' motion is due to be denied because this court is not a proper venue for this action. This action is due to be dismissed without prejudice for lack of personal jurisdiction and improper venue. An order consistent with this opinion will be entered.

**DONE** and **ORDERED** this April 5, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[6]   To be clear, if the court could exercise personal jurisdiction over Defendants in accordance with due process, then this court would be an appropriate venue for this civil copyright action, pursuant to 28 U.S.C. § 1400(a). A transfer of this action is not appropriate because Plaintiff has not identified a district that would be an appropriate forum for this action. (*See* Doc. # 31 at 5 ("Plaintiff is not sure of Defendants' exact current address, and therefore cannot determine which district within California Defendants may be residents of.")).